**IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| **OFFICE OF THE SPECIAL DEPUTY RECEIVER, ON BEHALF OF DANA POPISH SEVERINGHAUS, DIRECTOR OF THE ILLINOIS DEPARTMENT OF INSURANCE, SOLELY IN HER CAPACITY AS STATUTORY LIQUIDATOR OF AFFIRMATIVE INSURANCE COMPANY AND GATEWAY INSURANCE COMPANY, BY AND THROUGH JACOB STUCKEY, HER SPECIAL DEPUTY   RECEIVER AND ATTORNEY IN FACT AND CHIEF EXECUTIVE OFFICER,** | ) ) ) ) ) ) ) ) ) ) ) ) ) | |
| **Plaintiff,** | ) ) | |
| **v.** | ) ) | **Case No.** |
| **HARTFORD FIRE INSURANCE COMPANY and HSB SPECIALTY INSURANCE COMPANY,** | ) ) ) ) | |
| **Defendants.** | ) ) | |

**COMPLAINT FOR DECLARATORY JUDGMENT AND OTHER RELIEF**

NOW COMES Plaintiff OFFICE OF THE SPECIAL DEPUTY RECEIVER, ON BEHALF OF DANA POPISH SEVERINGHAUS, DIRECTOR OF THE ILLINOIS DEPARTMENT OF INSURANCE, SOLELY IN HER CAPACITY AS STATUTORY LIQUIDATOR OF AFFIRMATIVE INSURANCE COMPANY AND GATEWAY INSURANCE COMPANY, BY AND THROUGH JACOB STUCKEY, AS HER SPECIAL DEPUTY RECEIVER AND ATTORNEY IN FACT AND CHIEF EXECUTIVE OFFICER ("OSD"), and for its Complaint for Declaratory Judgment and Other Relief against Defendant HARTFORD FIRE INSURANCE COMPANY ("Hartford") and Defendant HSB SPECIALTY INSURANCE COMPANY ("HSB Specialty"), states as follows:

1

## NATURE OF THE CASE

1.      This is an action for declaratory relief and breach of contract, brought pursuant to 28 U.S.C. §§ 2201 and 2202, wherein OSD seeks a declaration regarding Hartford and HSB Specialty's duties and obligations to OSD as concerns a "Financial Institution Bond for Insurance Companies" issued by Hartford and under which OSD is a Named Insured ("the Hartford Bond"), and a Cyber Insurance Policy issued by HSB Specialty and under which OSD is a Named Insured ("the HSB Specialty Policy") relative to a first-party insurance claim.

2.      This first-party insurance claim involves a computer fraud scheme, which OSD first discovered on July 15, 2021. As part of the said computer fraud scheme, certain employees in OSD's finance and accounting department were deceived by e-mails from perpetrators of fraud that appeared as if they were coming from OSD's Chief Financial Officer ("CFO"), resulting in the transfer of approximately $6.8 million dollars from the accounts of two auto insurance companies under liquidation, Affirmative Insurance Company ("Affirmative"), and Gateway Insurance Company ("Gateway"), to overseas accounts ("the subject claim").

3.      Fortunately, the fraud was discovered mid-scheme and OSD's bank was able to recall some of the fraudulent wire transfers. As of this filing, approximately $2.87 million has been successfully recalled, and an estimated $3.98 million is still at risk.

4.      OSD purchased the Hartford Bond and the HSB Specialty Policy, and the said insurance contracts were designed to protect OSD against precisely the type of loss it has encountered as agent for the Liquidator of Affirmative and Gateway as a result of the aforesaid computer fraud scheme and the fraudulent wire transfers.

5.      OSD tendered the subject claim to Hartford under the Hartford Bond pursuant to the Computer Systems Fraud Coverage (*i.e.*, Rider 13) and Electronic Mail Initiated Transfer

Fraud Coverage (*i.e.*, Rider 17) therein. Despite OSD having paid its premiums for the Hartford Bond, giving prompt notice of the subject claim to Hartford, and cooperating fully and completely with Hartford's inquiry into the subject claim, Hartford denied that it owed any coverage under the Hartford Bond to OSD for the subject claim and has unjustifiably refused to pay the subject claim. This refusal to pay constitutes a breach of Hartford's contractual obligations to OSD.

6.      OSD also tendered the subject claim to HSB Specialty under the HSB Specialty Policy pursuant to the Social Engineering (*i.e.*, Coverage I.E.1(a)) and Computer Fraud (*i.e.*, Coverage I.E.2) Coverages therein. HSB Specialty acknowledged it owed Social Engineering Coverage (*i.e.*, Coverage I.E.1(a)) in the amount of $250,000.00 under the HSB Specialty Policy to OSD relative to the subject claim, but denied Computer Fraud Coverage (*i.e.*, Coverage I.E.2) under the HSB Specialty Policy to OSD for the subject claim.

7.      OSD paid its premiums for the HSB Specialty Policy, gave prompt notice of the subject claim to HSB Specialty, and cooperated fully and completely with HSB Specialty's inquiry into the subject claim. HSB Specialty's failure to honor its obligations to OSD under the Computer Fraud Coverage (*i.e.*, Coverage I.E.2) of the HSB Specialty Policy is unjustified and constitutes a breach of contract.

8.      This action seeks to resolve an actual justiciable controversy among and between the parties regarding the existence of Computer Systems Fraud Coverage (*i.e.*, Rider 13) and Electronic Mail Initiated Transfer Fraud Coverage (*i.e.*, Rider 17) for the subject claim under the Hartford Bond, and the existence of Computer Fraud Coverage (*i.e.*, Coverage I.E.2) for the subject claim under the HSB Specialty Policy.

**THE**
**PARTIES**

9.      Plaintiff Office of the Special Deputy Receiver, on behalf of Dana Popish Severinghaus, Director of the Illinois Department of Insurance ("Director"), solely in her capacity as statutory Liquidator ("Liquidator") of Affirmative and Gateway, by and through Jacob Stuckey, as Her Special Deputy Receiver and Attorney in Fact and Chief Executive Officer ("OSD"), is an Illinois not-for-profit corporation that administers the receivership estates for insolvent or financially troubled Illinois insurance companies, including Affirmative and Gateway, at the direction, instruction and supervision of the Director, as statutory Conservator, Rehabilitator, or Liquidator, currently Dana Popish Severinghaus, by and through her Special Deputy and Attorney in Fact and Chief Executive Officer of the Office of the Special Deputy Receiver, Jacob Stuckey, pursuant to Article XIII of the Illinois Insurance Code, 215 ILCS 5/187 *et seq.* & 215 ILCS 5/202.

10.      Upon information and belief, Defendant Hartford Fire Insurance Company ("Hartford") is  a  mutual insurance company organized under the laws of the State of Connecticut, with its principal place of business in the State of Connecticut. Upon information and belief, Hartford is authorized to sell, write, and issue policies of insurance in the State of Illinois and, at all material times, has conducted and continues to conduct substantial insurance business in the State of Illinois, including engaging in the business of selling insurance, investigating claims, and/or issuing policies that cover policyholders or activities located in Illinois.  Hartford is a citizen of Connecticut.

11.      Upon information and belief, Defendant HSB Specialty Insurance Company ("HSB Specialty") is  a  mutual insurance company organized under the laws of the State of Connecticut, with its principal place of business in the State of Connecticut. Upon information and belief, HSB Specialty is authorized to sell, write, and issue policies of insurance in the State of Illinois and, at all material times, has conducted and continues to conduct substantial insurance business in the State of Illinois, including engaging in the business of selling insurance,

investigating claims, and/or issuing policies that cover policyholders or activities located in Illinois. HSB Specialty is a citizen of Connecticut.

## JURISDICTION AND VENUE

12.     Jurisdiction is proper under 28 USC §1332(a)(1) since this is an action between citizens of different states, and the amount in controversy exceeds $75,000.00, exclusive of interests and costs.

13.     Venue is proper in this District pursuant to § 1391(b)(2) because a substantial part of the events giving rise to OSD's disputed claim for coverage under the Hartford Bond and the HSB Specialty Policy occurred in this District.

14.     Pursuant to 28 U.S.C. §§ 2201 and 2202, this Court has the power to declare and adjudicate the rights and liabilities, if any, of the parties under the Hartford Bond and the HSB Specialty Policy, and to give such other and further relief as may be necessary to enforce the same because an actual justiciable controversy exists between and among the parties that can be determined by an order of this Court.

## FACTUAL BACKGROUND OF SUBJECT CLAIM

15.     Beginning on or about June 17, 2021, OSD's then Chief Financial Officer ("CFO") was the victim of a fraud scheme commonly referred to as a spear phishing, and as a result, his OSD Outlook e-mail account was compromised by a third-party perpetrator. The third-party perpetrator thereafter reviewed the CFO's existing Outlook correspondence to gain an understanding of some of the key OSD employee names and business terminology.

16.     The scheme further proceeded when the CFO's accounting and finance subordinates, including OSD's then Controller and Assistant Controller, were contacted by e-mail by the third-party perpetrator (posing as the CFO) who requested monetary wire transfers to fund

new investments. OSD financial staff completed the transfers, and later discovered that the real CFO never requested the subject transactions.

17.     Although OSD's network security system at large was not breached, OSD's internal investigation revealed that the third-party perpetrator did breach the CFO's Outlook e-mail account and set up new rules therein whereby he or she was able to circumvent the CFO and his email inbox and reply to any questions OSD accounting and finance staff had regarding the subject monetary wire transfer transactions.

18.     The scheme resulted in eight (8) fraudulent wire transfers occurring between June 23, 2021, and July 14, 2021, for an aggregate total of approximately $6.85 million. The fraudulent wire transfers are summarized in the table below:

| Fraudulent Wire Transfers Date | | Amount | Bank name: | Status |
|---|---|---|---|---|
| 6.23.21 | $ | 336,364.00 | Bank of China HK LTD | Recall outstanding |
| 6.24.21 | $ | 336,364.00 | Bank of China HK LTD | Recall outstanding |
| 6.29.21 | $ | 650,000.00 | Bank of China HK LTD | Recall outstanding |
| 7.1.21 | $ | 826,000.00 | Bank of China HK LTD | Recall outstanding |
| 7.06.21 | $ | 930,000.00 | Bank of China HK LTD | Recall outstanding |
| 7.08.21 | $ | 770,500.00 | Bank of China HK LTD | Recalled/Recovered |
| 7.09.21 | $ | 900,000.00 | STANDARD CHARTERED BANK | Recall outstanding |
| 7.14.21 | $ | 2,100,000.00 | HSBC BANK (SINGAPORE) LIMITED | Recalled/Recovered |
| Total Wire Transfers | $ | 6,849,228.00 | | |
| Recovered | $ | 2,870,500.00 | | |
| Still at Risk | $ | 3,978,728.00 | | |

19.     Following OSD's discovery of the scheme, on July 15, 2021, OSD's bank, Bank of America, at OSD's immediate direction and notice, recovered approximately $2.87 million, leaving an estimated $3.98 million in OSD custodial funds lost to the phishing scheme ("the subject claim").

20.     The said fraudulent wire transfers were debited from the accounts of Gateway and Affirmative, which were then and still presently are under liquidation. Gateway formerly sold commercial auto insurance, and Affirmative formerly sold personal auto insurance. Affirmative

was ordered into liquidation in March 2016, and Gateway entered into liquidation in June 2020. Since their being placed into liquidation, OSD has marshalled and managed the assets of Gateway and Affirmative and distributed those assets to consumers and other creditors on Gateway and Affirmative's behalf pursuant to certain statutory claim procedures.

21.     In addition to conducting an internal investigation, OSD reported the computer fraud scheme to local authorities as well as to the Federal Bureau of Investigations. As of this filing, the third-party perpetrator has not been identified or apprehended and the estimated $3.98 million in OSD custodial funds has not been recovered or returned to Gateway and Affirmative's accounts.

## **THE HARTFORD BOND**

22.     On May 27, 2021, Hartford issued to OSD as a Named Insured a "Financial Institution Bond for Insurance Companies", bearing Bond No. 83F10284891-21, effective from May 27, 2021, to May 27, 2022 ("the Hartford Bond"). The Hartford Bond provided, among other coverage, Computer Systems Fraud Coverage (*i.e.*, Rider 13) and Electronic Mail Initiated Transfer Fraud Coverage (*i.e.*, Rider 17) to OSD. A true and accurate copy of the Hartford Bond is attached hereto as Exhibit 1.

23.     The Computer Systems Fraud Coverage (*i.e.*, Rider 13) of the Hartford Bond reflects a $5,000,000.00 single loss liability limit and a $50,000.00 single loss deductible. The Electronic Mail Initiated Transfer Fraud Coverage (*i.e.*, Rider 17) of the Hartford Bond reflects a $250,000.00 single and aggregate loss liability limit and a $50,000.00 single loss deductible. The Hartford Bond has an aggregate liability limit of $5,000,000.00.

24.     The Hartford Bond reads in relevant part:

Rider No. 13

\*   \*   \*

This rider modifies insurance provided under one of the following bond forms:

Financial Institution Bond for Insurance Companies

\*   \*   \*

1.      The attached bond is amended by adding an Insuring Agreement as follows:

COMPUTER SYSTEMS FRAUD

Loss resulting directly from a fraudulent

(1)     entry of Electronic Data or Computer Program into, or

(2)     change of Electronic Data or Computer Program within any Computer System operated by the Insured, whether owned or leased; or any Computer System identified in the application for this bond; or a Computer System first used by the Insured during the Bond Period, as provided by General Agreement B of this bond;

provided that the entry or change causes

(i)     property to be transferred, paid or delivered,

(ii)    an account of the Insured, or of its customer, to be added, deleted, debited or credited, or

(iii)   an unauthorized account or a fictitious account to be debited or credited.

In this Insuring Agreement, fraudulent entry or change shall include such entry or change made by an Employee of the Insured acting in good faith on an instruction from a software contractor who has a written agreement with the Insured to design, implement or service programs for a Computer System covered by this Insuring Agreement.

2.      In addition to the Conditions and Limitations in the bond, the following, applicable to the Computer Systems Fraud Insuring Agreement, are added:

\*   \*   \*

8

DEFINITIONS

(A)    Computer Program means a set of related electronic instructions which direct the operations and functions of a computer or devices connected to it which enable the computer or devices to receive, process, store or send Electronic Data;

(B)    Computer System means

    (1)    computers with related peripheral components, including storage components wherever located,

    (2)    systems and applications software,

    (3)    terminal devices, and

    (4)    related communication networks by which Electronic Data are electronically collected, transmitted, processed, stored and retrieved:

(C)    Electronic Data means facts or information converted to a form usable in a Computer System by Computer Programs, and which is stored on magnetic tapes or disks, or optical storage disks or other bulk media.

\* \* \*

EXCLUSIONS

\* \* \*

(B)    loss resulting directly or indirectly from negotiable instruments, securities, documents or other written instruments which bear a forged signature, or are counterfeit, altered or otherwise fraudulent and which are used as source documentation in the preparation of Electronic Data or manually keyed into a data terminal.

\* \* \*

(E)    loss resulting directly or indirectly from the theft of confidential information.

\* \* \*

Rider No. 17

\* \* \*

9

This rider modifies insurance provided under one of the following bond forms:

Financial Institution Bond for Insurance Companies

\* \* \*

1.     The attached bond is amended by adding an Insuring Agreement as follows:

ELECTRONIC MAIL INITIATED TRANSFER FRAUD

Loss resulting directly from the Insured having, in good faith, transferred or delivered Funds, Certificated Securities, Uncertificated Securities, in reliance upon a fraudulent instruction sent to the Insured through electronic mail, and:

(1)     Which fraudulent instruction purports and reasonably appears to have originated from:

(a)     a Customer of the Insured, or

(b)     an Employee acting on instructions of such Customer, or

(c)     another financial institution acting on behalf of such Customer with authority to make such instructions;

but, in fact, was not originated by the party referenced in (a) - (c) above whose identification it bears; and

(2)     the sender of the fraudulent instruction verified the instruction with the required password(s), PIN(s), or other security code(s) of such Customer; and

(3)     the fraudulent instruction was received by an Employee of the Insured specifically authorized by the Insured to receive and act upon such instructions; and

(4)     for any transfer exceeding $50,000, the instruction was verified by the Insured via a call-back to a predetermined telephone number set forth in the Insured's written account agreement with such Customer or other verification procedure set forth in the Insured's written agreement with such Customer and approved in writing by the Underwriter; and

(5)     the Insured preserved a contemporaneous record of the call back and of the instruction which verifies use of the authorized password(s), PIN(s), or other security code(s) of the Customer.

2.     Section 1, Definitions, of the CONDITIONS AND LIMITATIONS of this Bond is amended to include:

Customer means an entity or individual which has a written agreement with the Insured authorizing the Insured to transfer Funds, Certificated Securities or Uncertificated Securities in reliance upon electronic mail instructions transmitted to the Insured, and has provided the Insured with the names of persons and entities authorized to initiate such transfers, and with which the Insured has established a call-back verification mechanism, or other verification procedure approved in writing by the Underwriter, including, but not limited to, any other insurer or insurance producer.

Funds means Money on deposit in an account.

3.     Section 2, Exclusions, of the CONDITIONS AND LIMITATIONS of this Bond is amended to include:

This bond does not cover:

loss resulting directly or indirectly from the Insured having, in good faith, transferred or delivered Funds, Certificated Securities or Uncertificated Securities, in reliance upon a fraudulent instruction sent to the Insured through electronic mail, except when covered under the Electronic Mail Initiated Fraud insuring agreement;

\*   \*   \*

(*See* Exhibit 1, attached hereto).

## THE HSB SPECIALTY POLICY

25.    On June 19, 2021, HSB Specialty issued to OSD a Cyber Insurance Policy bearing Policy No. 6610165-01, effective from June 18, 2021, to June 18, 2022 ("the HSB Specialty Policy"). The HSB Specialty Policy provided, among other coverage, Social Engineering (*i.e.*,

11

Coverage I.E.1) and Computer Fraud Coverage (*i.e.*, Coverage I.E.2) to OSD. A true and accurate copy of the HSB Specialty Policy is attached hereto as Exhibit 2.

26.     Both the Social Engineering and Computer Fraud Coverages in the HSB Specialty Policy reflect a $250,000.00 liability sublimit subject to a $50,000.00 retention. The HSB Specialty Policy has an aggregate limit of $5,000,000.00.

27.     The HSB Policy reads, in relevant part:

I.      Insuring Agreements

        Coverage is afforded pursuant to those Insuring Agreements included under this Policy, displayed as "Included" in ITEM 6 of the Declarations, and for Claims and Cyber Events reported to us pursuant to the terms of this Policy:

                                *   *   *

E.      Financial Fraud

        1.   Social Engineering

             We shall pay the Insured Organization for Fraudulent Inducement Loss and Reward Expense Loss incurred by the Insured Organization as a direct result of Fraudulent Inducement Instructions it receives and accepts and which are first discovered during the Policy Period.

        2.   Computer Fraud

             We shall pay the Insured Organization for Computer Crime Loss and Reward Expense Loss incurred by the Insured Organization as a direct result of Computer Crimes first discovered during the Policy Period.

                                *   *   *

II.     Limits of Insurance

        Regardless of the number of Claims first made, Cyber Events first discovered, or number of Insuring Agreements purchased under this Policy:

        A.  Aggregate Limit of Insurance

1. The Aggregate Limit of Insurance is our maximum liability under this Policy for the duration of the Policy Period or, if exercised, the Extended Reporting Period.

2. We shall have no further obligations or liability under this Policy upon exhaustion of the Aggregate Limit of Insurance, including the continuation of payment of Loss, Damages, or Claims Expenses or the duty to defend or investigate any Claim.

B. Sub-Limits of Insurance

1. The amounts stated as Sub-Limits of Insurance in ITEM 6 of the Declarations, which are part of and not in addition to the Aggregate Limit of Insurance, are the most we shall pay for all Loss, Damages, and Claims Expenses with respect to the Insuring Agreement to which each such Sub-Limit of Insurance applies, and we shall not be responsible to pay any Loss, Damages, or Claims Expenses under such Insuring Agreement upon exhaustion of such Sub-Limit of Insurance.

2. Subject to II.A.1., II.A.2., and II.B.1. above, the most we shall pay for all Loss, Damages, and Claim Expenses shall be:

a. with respect to any Cyber Events or Claims which are covered under more than one Insuring Agreement, the sum of the Sub-Limits of Insurance available under the Insuring Agreements to which such Cyber Events or Claims apply;

\* \* \*

V. Definitions

\* \* \*

8. Computer Crimes means the intentional, fraudulent, or unauthorized input, destruction, or modification of electronic data or computer instructions into Computer Systems by any entity which is not an Insured Organization or person who is not an Insured Person, provided that such Computer Crimes cause:

a. Funds or Securities to be transferred, paid, or delivered; or

b.     an account of the Insured Organization, or of its customer, to be added, deleted, debited, or credited.

\*   \*   \*

25.    Fraudulent Inducement Instructions means the misrepresentation of one or more facts by a third-party person or entity via email or other means of electronic communication with the intent of misleading an Insured into transferring Funds or Securities.

\*   \*   \*

VI.    Exclusions

\*   \*   \*

B.    Exclusions Applicable to Financial Fraud Insuring Agreements

\*   \*   \*

Exclusively with respect to Insuring Agreement(s) I.E.1. and I.E.2., this Policy shall not apply to any Computer Crimes Loss, Fraudulent Inducement Loss, or Reward Expense Loss on account of any Computer Crimes or any Fraudulent Inducement Instructions:

3.    Forged or Altered Instruments

resulting directly from forged, altered, or fraudulent negotiable instruments, securities, documents or written instructions or instructions used as source documentation to enter electronic data or send instructions.

\*   \*   \*

VII.    Conditions

\*   \*   \*

J.    Other Insurance

1.    If any Loss, Damages, or Claim Expenses or other amounts covered under this Policy are covered under any other valid and collectible insurance, then this Policy shall apply only to the extent that the amount of such Loss, Damages, or Claim Expenses are in excess

of the amount of such other insurance whether such other insurance is specified as primary, contributory, excess, contingent or otherwise.

However, paragraph VII.J.1. above shall not apply if such other insurance is written explicitly to serve as excess insurance over the Aggregate Limit of Insurance or Sub-Limits of Insurance provided by this Policy.

\* \* \*

This endorsement is attached to, forms part of and modifies:

Policy number 6610165-01

Social Engineering Forged Instruments Carveback

In consideration of the premium charged, it is agreed that the Policy is amended as follows:

1) The following is added to Section VI, Exclusions, C. Exclusions Applicable to Financial Fraud Insuring Agreements, item 3, Forged or Altered Instruments:

However, this exclusion shall not apply with respect to Insuring Agreement I.E.1, Social Engineering.

All other terms, conditions and exclusions of the Policy shall remain unchanged.

\* \* \*

This endorsement is attached to, forms part of and modifies:

Policy number 6610165-01

Funds Transfer Coverage Fraud

In consideration of the premium charged, it is agreed that the Policy is amended as follows:

1) Section I. Insuring Agreements, E., Financial Fraud, 1. Social Engineering is deleted and replaced with the following:

1. Social Engineering

15

We shall pay the Insured Organization for Fraudulent Inducement Loss and Reward Expense Loss incurred by the Insured Organization as a direct result of:

a. Fraudulent Inducement Instructions it receives and accepts, and which are first discovered during the Policy Period; or

b. Fraudulent Inducement Instructions a Financial Institution receives and accepts, and which are first discovered, during the Policy Period.

2) The following is added to section V. Definitions 25. Fraudulent Inducement Instructions:

Solely with respect to Insuring Agreement I.E.1, Social Engineering, part b., Fraudulent Inducement Instructions means a fraudulent electronic, telegraphic cable, teletype, facsimile, telephone, or written instruction issued to a Financial Institution, without any Insured's knowledge, participation, or consent, which:

a) directs such Financial Institution to transfer, pay, or deliver Funds or Securities from a Bank Account

b) directly causes Funds or Securities to be transferred, paid, or delivered from a Bank Account;

c) is purportedly issued to such Financial Institution by an Insured; and

d) is issued to such Financial Institution by any entity which is not an Insured Organization or by any person who is not an Insured Person.

Fraudulent Inducement Instructions covered under Insuring Agreement I.E.I, Social Engineering, part b., does not mean or include Computer Fraud otherwise covered under Insuring Agreement I.E.2., Computer Fraud.

\* \* \*

(*See* Exhibit 2, attached hereto).

## OSD'S TENDER OF THE SUBJECT CLAIM TO HARTFORD AND HARTFORD'S DENIAL OF THE SAME

28.     Notification of the subject claim was provided by Alliant Insurance Services, Inc., OSD's insurance broker, on OSD's behalf to Hartford on July 19, 2021. A phone conference regarding the subject claim was thereafter held between OSD and Hartford representatives on July 23, 2021. That same day, OSD forwarded a document titled "OSD Fraud Incident Report: Computer System Breach and Resulting Fraud" ("Fraud Incident Report"), dated July 23, 2021, to Hartford. A true and accurate copy of the Fraud Incident Report is attached hereto as Exhibit 3.

29.     On July 29, 2021, Hartford acknowledged and issued a reservation of rights relative to the subject claim. In particular, Hartford reserved its right to deny Computer Systems Fraud Coverage under Rider 13 of the Hartford Bond to OSD on the basis that the subject claim may not have resulted directly from a fraudulent entry of or change in Electronic Data or Computer Program into OSD's Computer System.

30.     Hartford further reserved its right to deny Computer Systems Fraud Coverage under Rider 13 of the Hartford Bond to OSD for the subject claim to the extent that the "Forged Signature or Counterfeit Negotiable Instruments, Securities, Documents or Other Written Instruments" Exclusion and the "Theft of Confidential Information" Exclusion barred such Coverage.

31.     Hartford additionally reserved its right to deny Electronic Mail Initiated Transfer Fraud Coverage under Rider 17 of the Hartford Bond to OSD on the basis that the subject claim did not involve requested transfers made by or on behalf of a Customer of OSD. Further, Hartford reserved its rights as concerned Electronic Mail Initiated Transfer Fraud Coverage under Rider 17 of The Hartford Bond, noting that to the extent the subject claim resulted from the transfer of funds by OSD in reliance upon a fraudulent e-mailed instruction, coverage would be precluded under all of the Hartford Bond's insuring agreements, other than in the Customer rubric scenario set forth

17

in the Electronic Mail Initiated Transfer Fraud Insuring Agreement in Rider 17, including the Computer Systems Fraud Insuring Agreement contained in Rider 13.

32.     Finally, as part of its July 29, 2021, reservation of rights correspondence, Hartford enclosed a Proof of Loss form and requested that OSD provide additional, specified information and documents relative to the subject claim. A true and correct copy of Hartford's July 29, 2021, reservation of rights correspondence is attached hereto as Exhibit 4.

33.     OSD provided Hartford with an executed Proof of Loss form and an Index of Appendices on October 26, 2021. Additional claim materials, and including an October 28, 2021, report compiled by NTT Data, OSD's IT provider, were provided to Hartford on November 5, 2021, November 7, 2021, and/or November 15, 2021. In addition, OSD submitted a letter on February 28, 2022, which included an additional report compiled by NTT Data, in response to even more specific inquiries made by Hartford. A true and correct copy of NTT Data's October 28, 2021, report is attached hereto as Exhibit 5. A true and correct copy of OSD's February 28, 2022, letter to Hartford, including the additional report compiled by NTT Data, is attached hereto as Group Exhibit 6.

34.     On May 6, 2022, Hartford issued coverage denial correspondence to OSD for the subject claim. In its denial of coverage correspondence, Hartford asserted that it was denying Electronic Mail Initiated Transfer Fraud Coverage under Rider 17 of the Hartford Bond to OSD because the subject claim did not involve requested transfers made by or on behalf of a Customer of OSD. Hartford further averred that it owed no coverage to OSD under the Electronic Mail Initiated Transfer Fraud Coverage (*i.e.*, Rider 17) of the Hartford Bond because any instance of an alleged transfer of funds by an insured in reliance upon a fraudulent emailed instruction must satisfy the Customer rubric set forth in the Electronic Mail Initiated Transfer Fraud Coverage (*i.e.*,

Rider 17) in order for there to be any coverage for such an incident under the Harford Bond, including under Computer Systems Fraud Coverage (*i.e.*, Rider 13) of the Hartford Bond.

35.     In its May 6, 2022, denial of coverage correspondence, Hartford further asserted that it was denying Computer Systems Fraud Coverage under Rider 13 of the Hartford Bond to OSD for the subject claim because the loss did not result directly from a fraudulent entry of Electronic Data or Computer Program into OSD's Computer System or change of Electronic Data or Computer Program within OSD's Computer System.

36.     Hartford additionally contended in its May 6, 2022, denial of coverage correspondence that to the extent OSD posited that the fraudulent e-mails forwarded through the CFO's Outlook e-mail account constituted Electronic Data, the subject claim and corresponding loss did not result directly from those e-mails, but instead resulted directly from human decision-making and the acts of OSD employees in initiating and authorizing the transfer of money and securities.

37.     As concerned the (purported) lack of Computer Systems Fraud Coverage under Rider 13 of the Hartford Bond to OSD for the subject claim, Hartford also asserted as part of its May 6, 2022, denial of coverage correspondence that the "Forged Signature or Counterfeit Negotiable Instruments, Securities, Documents or Other Written Instruments" Exclusion and the "Theft of Confidential Information" Exclusion barred such Coverage. A true and accurate copy of Hartford's May 6, 2022, denial of coverage correspondence to OSD is attached hereto as Exhibit 7.

### OSD'S TENDER OF THE SUBJECT CLAIM TO HSB SPECIALTY AND HSB SPECIALTY'S DENIAL (IN PART) OF THE SAME

38.     Notification of the subject claim was provided by Alliant Insurance Services, Inc., OSD's insurance broker, on OSD's behalf to HSB Specialty on July 19, 2021. A phone conference

regarding the subject claim was thereafter held between OSD and HSB representatives on July 21, 2021. That same day, HSB Specialty requested additional information from OSD concerning the subject claim and OSD responded by providing NTT Data's contact information. On July 23, 2021, OSD forwarded the Fraud Incident Report, dated July 23, 2021, to HSB Specialty. Additional communications occurred between OSD and HSB Specialty in August 2021. A true and accurate copy of OSD's Fraud Incident Report to HSB Specialty is attached hereto as Exhibit 8.

39.     On October 15, 2021, HSB Specialty issued a reservation of rights relative to the subject claim. HSB Specialty acknowledged that a covered loss occurred under the Social Engineering Coverage (*i.e.*, Coverage I.E.1(a)) of the HSB Specialty Policy. HSB Specialty's October 15, 2021, reservation of rights correspondence said nothing about the Computer Fraud Coverage (*i.e.*, Coverage I.E.2) in the HSB Specialty Policy. A true and accurate copy of HSB Specialty's October 15, 2021, reservation of rights correspondence to OSD is attached hereto as Exhibit 9.

40.     On May 16, 2022, HSB Specialty notified OSD that it was processing a payment relative to the subject claim under the Social Engineering Coverage (*i.e.*, Coverage I.E.1(a)) of the HSB Specialty Policy in the amount of $250,000.00. Once again, HSB Specialty said nothing about coverage for the subject claim under the Computer Fraud Coverage (*i.e.*, Coverage I.E.2) of the HSB Specialty Policy. A true and accurate copy of HSB Specialty's May 16, 2022, correspondence to OSD is attached hereto as Exhibit 10.

41.     On May 24, 2022, OSD received Check No. 1000000863 from HSB Specialty, dated May 17, 2022, in the amount of $250,000.00, representing a payment relative to the subject claim under the Social Engineering Coverage (*i.e.*, Coverage I.E.1(a)) of the HSB Specialty Policy. No claim release accompanied the check. Once again, HSB Specialty said nothing about coverage

for the subject claim under the Computer Fraud Coverage (*i.e.*, Coverage I.E.2) of the HSB Specialty Policy.

42.     On June 10, 2022, OSD acknowledged its receipt of Check No. 1000000863 from HSB Specialty, dated May 17, 2022, in the amount of $250,000.00, representing a payment relative to the subject claim under the Social Engineering Coverage (*i.e.*, Coverage I.E.1(a)) of the HSB Specialty Policy. Via its June 10, 2022, correspondence, OSD further inquired about HSB Specialty's position as to the availability of Computer Fraud Coverage (*i.e.*, Coverage I.E.2) under the HSB Specialty Policy for the subject claim. A true and accurate copy of OSD's June 10, 2022, correspondence to HSB Specialty is attached hereto as Exhibit 11.

43.     On June 24, 2022, HSB Specialty issued a denial letter as concerned Computer Fraud Coverage (*i.e.*, Coverage I.E.2) under the HSB Specialty Policy for the subject claim. HSB Specialty posited that no Computer Fraud Coverage (*i.e.*, Coverage I.E.2) was available to OSD under the HSB Specialty Policy for the subject claim because the fraud scheme at issue did not meet the definition of Computer Crimes in the HSB Specialty Policy and the subject claim did not directly result from Computer Crimes. A true and accurate copy of HSB Specialty's June 24, 2022, correspondence to OSD is attached hereto as Exhibit 12.

44.     A case of actual controversy exists in connection with the parties' rights and obligations under the Hartford Bond and the HSB Specialty Policy and, pursuant to 28 USC §2201(a), this Court has jurisdiction to declare the rights and legal obligations of any interested party seeking relief.

## COUNT I
## DECLARATORY JUDGMENT – OSD v. HARTFORD
## THE SUBJECT CLAIM FALLS WITH THE HARTFORD BOND'S COVERAGE

45.     OSD repeats and re-alleges paragraphs 1-44 as though fully set forth herein.

46.     Coverage exists under the Computer Systems Fraud Coverage (*i.e.*, Rider 13) of the Hartford Bond    because the subject claim involves a Loss resulting directly from a fraudulent entry of Electronic Data or Computer Program into OSD's Computer System or change of Electronic Data or Computer Program within OSD's Computer System that caused property to be transferred, paid or delivered, an account of OSD and/or its customer to be debited or an unauthorized account to be debited.

47.     None of Hartford's cited exclusions, including the "Forged Signature or Counterfeit Negotiable Instruments, Securities, Documents or Other Written Instruments" Exclusion and the "Theft of Confidential Information" Exclusion apply so as to bar coverage for the subject claim under the Computer Systems Fraud Coverage (*i.e.*, Rider 13) of the Hartford Bond.

48.     Hartford's attempt to limit its coverage in instances of where electronic mail is used to carry out a computer fraud scheme to only the Customer rubric set forth in the Electronic Mail Initiated Transfer Fraud Coverage (*i.e.*, Rider 17) of the Hartford Bond cannot bar coverage for the subject claim under the Computer Systems Fraud Coverage (*i.e.*, Rider 13) of the Hartford Bond, as Rider 13 is a separate insuring agreement from Rider 17, and if such were the case, the Computer Systems Fraud Coverage (*i.e.*, Rider 13) of the Hartford Bond would be rendered illusory.

49.     Alternatively, to the extent that any of the terms, conditions, or exclusions of the Hartford Bond, including the Electronic Mail Initiated Transfer Fraud Coverage (*i.e.*, Rider 17) and the Computer Systems Fraud Coverage (*i.e.*, Rider 13) therein, are ambiguous, those terms, conditions, and exclusions must be construed against Hartford and in OSD's favor.

50. Hartford disputes that it has a legal obligation under either the Electronic Mail Initiated Transfer Fraud Coverage (*i.e.*, Rider 17) or the Computer Systems Fraud Coverage (*i.e.*, Rider 13) of the Hartford Bond to pay the subject claim.

51. Pursuant to 28 U.S.C. § 2201, OSD is entitled to a declaration by the Court of Hartford's obligations under the Hartford Bond.

52. An actionable and justiciable controversy exists between OSD and Hartford concerning the proper construction of the Hartford Bond, and the rights and obligations of the parties therein, with respect to the subject claim.

53. OSD is entitled to a declaration that there is coverage available to it for the subject claim under the Hartford Bond, and pursuant to 28 U.S.C. § 2202, any other relief that this Court deems proper.

WHEREFORE, Plaintiff OFFICE OF THE SPECIAL DEPUTY RECEIVER, ON BEHALF OF DANA POPISH SEVERINGHAUS, DIRECTOR OF THE ILLINOIS DEPARTMENT OF INSURANCE ("DIRECTOR"), SOLELY IN HER CAPACITY AS STATUTORY LIQUIDATOR ("LIQUIDATOR") OF AFFIRMATIVE INSURANCE COMPANY AND GATEWAY INSURANCE COMPANY, BY AND THROUGH JACOB STUCKEY, AS HER SPECIAL DEPUTY RECEIVER AND ATTORNEY IN FACT AND CHIEF EXECUTIVE OFFICER ("OSD"), respectfully prays that this Honorable Court find in its favor and against Defendant HARTFORD FIRE INSURANCE COMPANY and declare that the subject claim is covered under the Computer Systems Fraud Coverage under Rider 13 of the Hartford Bond issued to OSD. OSD further prays for any and all other relief deemed necessary, just, and appropriate under the circumstances.

## COUNT II
## BREACH OF CONTRACT – OSD v. HARTFORD

## THE SUBJECT CLAIM FALLS WITH THE HARTFORD BOND'S COVERAGE

54.     OSD repeats and re-alleges paragraphs 1-44 as though fully set forth herein.

55.     The Hartford Bond is a valid and binding contract between OSD and Hartford, and Hartford has wrongly asserted that the Hartford Bond, including the Computer Systems Fraud Coverage (*i.e.*, Rider 13) therein, does not cover the subject claim.

56.     The terms of the Computer Systems Fraud Coverage (*i.e.*, Rider 13) in the Hartford Bond   provide that such coverage exists when a claim involves a Loss resulting directly from a fraudulent entry of Electronic Data or Computer Program into an insured's Computer System or change of Electronic Data or Computer Program within an insured's Computer System that causes property to be transferred, paid or delivered, or an account of the insured and/or its customer to be debited or an unauthorized account to be debited.

57.     The subject claim and the associated loss fit within the terms of the Computer Systems Fraud Coverage (*i.e.*, Rider 13) in the Hartford Bond.

58.     None of Hartford's cited exclusions, including the "Forged Signature or Counterfeit Negotiable Instruments, Securities, Documents or Other Written Instruments" Exclusion and the "Theft of Confidential Information" Exclusion apply so as to bar coverage for the subject claim under the Computer Systems Fraud Coverage (*i.e.*, Rider 13) of the Hartford Bond.

59.     Hartford's attempt to limit its Computer Systems Fraud Coverage (*i.e.*, Rider 13) in instances of where electronic mail is used to carry out a computer fraud scheme to only the Customer rubric set forth in the Electronic Mail Initiated Transfer Fraud Coverage (*i.e.*, Rider 17) cannot bar coverage for the subject claim under the Computer Systems Fraud Coverage (*i.e.*, Rider 13) of the Hartford Bond, as Rider 13 is a separate insuring agreement from Rider 17, and if such

were the case, the Computer Systems Fraud Coverage (*i.e.*, Rider 13) of the Hartford Bond would be rendered illusory.

60.     Alternatively, to the extent that any of the terms, conditions, or exclusions of the Hartford Bond, including the Electronic Mail Initiated Transfer Fraud Coverage (*i.e.*, Rider 17) and the Computer Systems Fraud Coverage (*i.e.*, Rider 13) therein, are ambiguous, those terms, conditions, and exclusions must be construed against Hartford and in OSD's favor.

61.     OSD has fully performed its obligations under the Hartford Bond, including all conditions precedent.

62.     Hartford has breached the Hartford Policy by refusing to indemnify OSD for the subject claim.

63.     As a result of Hartford's breach of the Hartford Policy, OSD has suffered damages in the amount of approximately $3.98 million.

WHEREFORE, Plaintiff OFFICE OF THE SPECIAL DEPUTY RECEIVER, ON BEHALF OF DANA POPISH SEVERINGHAUS, DIRECTOR OF THE ILLINOIS DEPARTMENT OF INSURANCE ("DIRECTOR"), SOLELY IN HER CAPACITY AS STATUTORY LIQUIDATOR ("LIQUIDATOR") OF AFFIRMATIVE INSURANCE COMPANY AND GATEWAY INSURANCE COMPANY, BY AND THROUGH JACOB STUCKEY, AS HER SPECIAL DEPUTY RECEIVER AND ATTORNEY IN FACT AND CHIEF EXECUTIVE OFFICER ("OSD"), respectfully prays that this Honorable Court find in its favor and against Defendant HARTFORD FIRE INSURANCE COMPANY and declare that Hartford has breached the terms and conditions of the Hartford Bond in positing that the Hartford Bond does not provide coverage for the subject claim and further declare that Hartford must pay OSD for all damages arising from Hartford's breach of the terms and conditions of the Hartford

Bond. OSD further prays for any and all other relief deemed necessary, just, and appropriate under the circumstances.

## COUNT III
## DECLARATORY JUDGMENT – OSD v. HSB SPECIALTY
## THE SUBJECT CLAIM TRIGGERS THE HSB SPECIALTY POLICY'S COMPUTER
## FRAUD COVERAGE (COVERAGE I.E.2)

64. OSD repeats and re-alleges paragraphs 1-44 as though fully set forth herein.

65. Coverage exists under the Computer Fraud Coverage (*i.e.*, Coverage I.E.2) of the HSB Specialty Policy because the subject claim involves a Computer Crime Loss and Reward Expense Loss incurred by OSD as a direct result of Computer Crimes first discovered during the Policy Period, as those terms are defined in the HSB Specialty Policy.

66. No exclusions apply so as to bar coverage for the subject claim under the Computer Fraud Coverage (*i.e.*, Coverage I.E.2) of the HSB Specialty Policy.

67. Alternatively, to the extent that any of the terms, conditions, or exclusions of the HSB Specialty Policy, including the Computer Fraud Coverage (*i.e.*, Coverage I.E.2) therein, are ambiguous, those terms, conditions, and exclusions must be construed against HSB Specialty and in OSD's favor.

68. OSD has fully performed its obligations under the HSB Specialty Policy, including all conditions precedent.

69. HSB Specialty has breached the HSB Specialty Policy by refusing to indemnify OSD under the Computer Fraud Coverage (*i.e.*, Coverage I.E.2) for the subject claim.

70. As a result of HSB Specialty's breach of the HSB Specialty Policy, OSD has suffered damages in the amount of approximately $3.98 million.

71.     Pursuant to 28 U.S.C. § 2201, OSD is entitled to a declaration by the Court of HSB Specialty's obligations under the Computer Fraud Coverage (*i.e.*, Coverage I.E.2) of the HSB Specialty Policy.

72.     An actionable and justiciable controversy exists between OSD and HSB Specialty concerning the proper construction of the HSB Specialty Policy, and the rights and obligations of the parties therein, with respect to the subject claim.

73.     OSD is entitled to a declaration that there is coverage available to it for the subject claim under the Computer Fraud Coverage (*i.e.*, Coverage I.E.2) of the HSB Specialty Policy, and pursuant to 28 U.S.C. § 2202, any other relief that this Court deems proper.

WHEREFORE, Plaintiff OFFICE OF THE SPECIAL DEPUTY RECEIVER, ON BEHALF OF DANA POPISH SEVERINGHAUS, DIRECTOR OF THE ILLINOIS DEPARTMENT OF INSURANCE ("DIRECTOR"), SOLELY IN HER CAPACITY AS STATUTORY LIQUIDATOR ("LIQUIDATOR") OF AFFIRMATIVE INSURANCE COMPANY AND GATEWAY INSURANCE COMPANY, BY AND THROUGH JACOB STUCKEY, AS HER SPECIAL DEPUTY RECEIVER AND ATTORNEY IN FACT AND CHIEF EXECUTIVE OFFICER ("OSD"), respectfully prays that this Honorable Court find in its favor and against Defendant HSB SPECIALTY INSURANCE COMPANY and declare that the subject claim is covered under the Computer Fraud Coverage (*i.e.*, Coverage I.E.2) of the HSB Specialty Policy issued to OSD. OSD further prays for any and all other relief deemed necessary, just, and appropriate under the circumstances.

**COUNT IV**
**BREACH OF CONTRACT – THE SUBJECT CLAIM TRIGGERS HSB SPECIALTY'S**
**COMPUTER FRAUD COVERAGE (I.E., COVERAGE I.E.2)**

74.     OSD repeats and re-alleges paragraphs 1-44 as though fully set forth herein.

75.     The HSB Specialty Policy is a valid and binding contract between OSD and HSB Specialty, and HSB Specialty has wrongly asserted that the Computer Fraud Coverage (*i.e.*, Coverage I.E.2) therein, does not cover the subject claim.

76.     The terms of the Computer Fraud Coverage (*i.e.*, Coverage I.E.2) in the HSB Specialty Policy provide that such coverage exists when a claim involves a Computer Crime Loss and Reward Expense Loss incurred by the insured as a direct result of Computer Crimes first discovered during the Policy Period.

77.     The subject claim and the associated loss fit within the terms of the Computer Fraud Coverage (*i.e.*, Coverage I.E.2) in the HSB Specialty Policy.

78.     None of the exclusions in the Computer Fraud Coverage (*i.e.*, Coverage I.E.2) of the HSB Specialty Policy apply so as to bar such coverage for the subject claim.

79.     Alternatively, to the extent that any of the terms, conditions, or exclusions of the HSB Policy, including the Computer Fraud Coverage (*i.e.*, Coverage I.E.2) therein, are ambiguous, those terms, conditions, and exclusions must be construed against HSB Specialty and in OSD's favor.

80.     OSD has fully performed its obligations under the HSB Specialty Policy, including all conditions precedent.

81.     HSB Specialty has breached the HSB Specialty Policy by refusing to indemnify OSD for the subject claim under its Computer Fraud Coverage (*i.e.*, Coverage I.E.2).

82.     As a result of HSB Specialty's breach of the HSB Specialty Policy, OSD has suffered damages in the amount of approximately $3.98 million.

WHEREFORE, Plaintiff OFFICE OF THE SPECIAL DEPUTY RECEIVER, ON BEHALF OF DANA POPISH SEVERINGHAUS, DIRECTOR OF THE ILLINOIS

DEPARTMENT OF INSURANCE ("DIRECTOR"), SOLELY IN HER CAPACITY AS STATUTORY LIQUIDATOR ("LIQUIDATOR") OF AFFIRMATIVE INSURANCE COMPANY AND GATEWAY INSURANCE COMPANY, BY AND THROUGH JACOB STUCKEY, AS HER SPECIAL DEPUTY RECEIVER AND ATTORNEY IN FACT AND CHIEF EXECUTIVE OFFICER ("OSD"), respectfully prays that this Honorable Court find in its favor and against Defendant HSB SPECIALTY INSURANCE COMPANY and declare that HSB Specialty has breached the terms and conditions of the HSB Specialty Policy in positing that the Computer Fraud Coverage (*i.e.*, Coverage I.E.2) therein does not provide coverage for the subject claim and further declare that HSB Specialty must pay OSD for all damages arising from HSB Specialty's breach of the terms and conditions of the HSB Specialty Policy. OSD further prays for any and all other relief deemed necessary, just, and appropriate under the circumstances.

Respectfully submitted,

OFFICE OF THE SPECIAL DEPUTY RECEIVER, ON BEHALF OF DANA POPISH SEVERINGHAUS, DIRECTOR OF THE ILLINOIS DEPARTMENT OF INSURANCE ("DIRECTOR"), SOLELY IN HER CAPACITY AS STATUTORY LIQUIDATOR ("LIQUIDATOR") OF AFFIRMATIVE INSURANCE COMPANY AND GATEWAY INSURANCE COMPANY, BY AND THROUGH JACOB STUCKEY, AS HER SPECIAL DEPUTY RECEIVER AND ATTORNEY IN FACT AND CHIEF EXECUTIVE OFFICER ("OSD")

/s/ Jennifer L. Turiello

Date: July 18, 2022                One of the Attorneys for Plaintiff Office of the Special Deputy Receiver, on Behalf of Dana Popish Severinghaus, Director of the Illinois Department of Insurance ("Director"), Solely in Her Capacity as Statutory Liquidator ("Liquidator") of Affirmative Insurance Company and Gateway Insurance Company, by and through Jacob Stuckey, as Her Special Deputy Receiver and Attorney in Fact and Chief Executive Officer ("OSD")

Paul A. O'Grady (Attorney No. 6271373)
Dominick L. Lanzito (Atty. No. 6277856)
Jennifer L. Turiello (Attorney No. 6275505)
PETERSON, JOHNSON & MURRAY – CHICAGO, LLC
200 West Adams Street, Suite 2125
Chicago, Illinois 60606
(312) 782-7150
pogrady@pjmchicago.com
dlanzito@pjmchicago.com
jturiello@pjmchicago.com